IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DENISE K. HAMMA, | ) | |
| | ) | |
| Plaintiff, | ) | 2:07-cv-01795-GEB-CMK |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| INTEL CORPORATION; INTEL CORPORATION LONG TERM; DISABILITY BENEFIT PLAN; INTEL DISABILITY APPEALS COMMITTEE; and MATRIX ABSENCE MANAGEMENT, INC., | ) ) ) ) ) ) | |
| Defendants. | ) | |

Defendants Intel Corporation, Intel Corporation Long Term Disability Plan, Intel Disability Appeals Committee (collectively "Intel"), and Matrix Absence Management ("Matrix") seek summary judgment on Plaintiff's claim under 29 U.S.C. § 1132(a)(1)(b) ("ERISA") for long term disability ("LTD") benefits. Plaintiff opposes the motion and requests in her Opposition brief that summary judgment be granted in her favor. Plaintiff's motion has not been duly noticed for hearing and is denied on that ground. The parties dispute whether Defendants abused their discretion in determining Plaintiff did not present "Objective Medical Findings" that her

condition, Chiari I Malformation, was a "Disability" as defined by the LTD Plan (the "Plan"). Additionally, the parties dispute whether Plaintiff's claim should be evaluated under an abuse of discretion standard of review or a heightened standard of review since Intel funded the Plan.

## Background

Plaintiff worked at Intel from June 2000 until February 2004 as an Administrative Support Specialist. On March 12, 2004, Plaintiff applied for LTD benefits under the Plan, listing her disabling condition as "Chiari malformation and Syringomyelia." (Pl. Application for LTD Benefits.) Plaintiff had previously applied for and been granted short term disability benefits under a separate plan offered to Intel employees.

Beginning in 1994, Intel delegated the responsibility for administration of the Plan to an independent third party, Matrix. Matrix makes an initial determination whether to award or deny LTD benefits to Intel employees applying for LTD benefits. If Matrix denies an application for LTD benefits, an employee may appeal his or her claim to the Intel Disability Appeals Committee ("Appeals Committee"), which is comprised of Intel employees. However, even during the appeal, Matrix acts as an intermediary, assisting employees to organize their appeal files and to obtain additional physician review of their files. The Plan granted discretion to Matrix and the Appeals Committee to make factual determinations and to interpret the terms of the Plan.

Under the Plan terms, disability is defined as "an illness or injury substantiated by objective medical findings and which renders a participant incapable of performing work." (Intel

Corporation Long Term Disability Plan, 2.05.) "Objective medical findings" are defined by the Plan "as a measurable abnormality which is evidenced by one or more standard medical diagnostic procedures;" objective medical findings do not include "physicians' opinions or other third party opinions based solely on the acceptance of subjective complaints." (Id. at 2.14.) Under the Plan, even if a disability is generally recognized by the medical community and is substantiated by objective medical findings, "it will not be considered disabling if the Participant had such illness, injury or condition on the date of hire by the Company unless it can be shown by further objective medical findings that such illness, injury or condition materially deteriorated since the date of hire by the company." (Id. at 4.03(L).)

Following Matrix's receipt of Plaintiff's application, it requested and received Plaintiff's medical records from numerous physicians. (June 25, 2005 Letter from Matrix to Plaintiff.) Matrix then contacted Doctor Experts, a referral agency for independent review of medical files, in order to arrange for Plaintiff's medical records to be reviewed by an independent physician. Doctor Experts then hired Dr. Burres, and Dr. Burres reviewed Plaintiff's medical records. (Dr. Kenneth Burres, Independent Medical Examination, Ex. 21 at 7.) Thereafter, Dr. Burres concluded that "[Plaintiff is capable of performing her sedentary job at Intel [ ], and [he found] no objective or substantive reason why restrictions or limitations should be placed [on Plaintiff]." (Id. at 8.)

Matrix relied upon Dr. Burres's review and notified Plaintiff that her application for LTD benefits had been denied. Matrix explained that "the current objective medical findings do not

support a disability as defined by the Plan." (Letter from Matrix Absence Management, Inc., Exhibit 2.) Matrix further notified Plaintiff that her LTD benefits claim was being denied because her condition existed prior to her employment with Intel. (Id.)

On December 2, 2004, Plaintiff appealed Matrix's denial of her LTD benefits claim. Plaintiff submitted additional information to Matrix, the entity that prepared Plaintiff's appeal file, to substantiate her claim for LTD benefits. For purposes of the appeal, Matrix consulted CORE, an independent clearinghouse for medical peer reviews, and requested that a neurologist review Plaintiff's file. CORE hired Dr. Sands, a neurologist, who concluded:

> The patients [ ] pain complaints involve both upper and lower extremities and back while no signs of neurologic damage are present. . . Therefore, not only are there no objective physical findings, but the symptoms fit no pattern supportive of a precise diagnosis . . . The objective medical findings are not of so severe a nature to prevent the patient from performing any occupation for which she is or becomes qualified for based on education, training, and experience.

(Dr. Jonathan Sands Report, Ex. 28 at 1-2.)

The Appeals Committee considered Plaintiff's appeal on August 18, 2005 and affirmed Matrix's denial of LTD benefits. On September 1, 2005, Plaintiff was notified of the Appeals Committee's decision. On August 31, 2007, Plaintiff filed a complaint against Defendants for wrongful denial of benefits.

## Analysis

### Standard of Review

The Plan confers discretionary authority upon Intel to determine eligibility for benefits; Intel has delegated this discretionary authority to Matrix. "Where an ERISA plan confers

4

discretionary authority upon a plan administrator to determine eligibility for benefits, [district courts] generally review the administrator's decision to deny benefits for an abuse of discretion." Nolan v. Heald College, 551 F.3d 1148, 1153 (9th Cir. 2009). See also Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 965 (9th Cir. 2006).

Plaintiff, however, argues that because the Plan is funded from Intel's general assets, a structural conflict of interest exists and a heightened standard of review should apply. When an employer "acts as both the plan administrator and the funding source for benefits [it] operates under what may be termed a structural conflict of interest." Id. at 965.

> Where a plan administrator operates under a [structural] conflict of interest . . . a court must weigh the conflict as a factor in determining whether there is an abuse of discretion. [C]onsideration of the conflict can affect judicial review, and a court is required to consider the conflict whenever it exists, and to temper the abuse of discretion standard with skepticism commensurate with the conflict.

Nolan, 551 F.3d at 1153.

Only a serious conflict of interest warrants a heightened standard of review. Jordan v. Northrop Grumman Corp. Welfare Benefit Plan, 370 F.3d 869, 875 (9th Cir. 2004). Plaintiff "has the burden to come forward with 'material, probative evidence, beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligations ....'" Bendixen v. Standard Ins. Co., 185 F.3d 939, 943 (9th Cir. 1999) (quoting Atwood v. Newmont Gold Co., 45 F.3d 1317, 1323 (9th Cir. 1995).

> [Further, t]he level of skepticism with which a court views a conflicted administrator's decision

5

> may be low if a structural conflict of interest is unaccompanied, for example, by any evidence of malice, of self-dealing, or of a parsimonious claims-granting history. A court may weigh a conflict more heavily if, for example, the administrator provides inconsistent reasons for denial, fails adequately to investigate a claim or ask the plaintiff for necessary evidence, fails to credit a claimant's reliable evidence, or has repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of evidence in the record.

Abatie, 458 F.3d at 968-9.

Defendants argue that "any structural conflict has been effectively eliminated by Intel's delegation of its administrative duties to Matrix." Wallace v. Intel Corp., 2006 WL 2709839 *6 (D. Ariz. 2006). "[A] company's delegation of claims administration responsibilities, while not sufficient to negate a structural conflict outright, is a significant factor in assessing the impact of that conflict in an elevated abuse of discretion review." Id.

Plaintiff argues a higher standard of review should be applied because the Appeals Committee was comprised solely of Intel employees; and contends her co-workers may be biased in making benefit determinations for their co-workers. Defendants controvert Plaintiff's assertion that the Appeals Committee was biased through the declarations of Appeals Committee members who evaluated Plaintiff's claim.[1] (Ex. 45-47.) George Aubrey, declares, "I and the

---

[1] At the hearing held on February 23, 2009, Plaintiff requested leave to file a sur-reply to Defendants' Statement of Supplemental Facts, which was filed with Defendants' Reply, and to conduct further discovery. Defendants' Reply included affidavits and declarations controverting Plaintiff's argument that inferences of bias should be drawn against Defendants. This request is denied and Defendants' Reply is considered in its entirety for the following reasons. Plaintiff had five months from the filing of Defendants' Motion for Summary Judgment to file the necessary exhibits for her opposition. Additionally, Plaintiff was previously granted limited discovery under Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955 (9th Cir. 2006), on her claim that there is a structural conflict of interest. (March 4, 2008 Order 4-5:18-5.)
(continued...)

other employees who served on the Appeals Committee were there to hear appeals of claims that had been denied by Matrix and essentially to make sure that Matrix did not deny a claim that should have been granted, consistent with the terms and conditions of the [LTD] benefits Plan." (Aubrey Decl. ¶ 2, Ex. 46.) Additionally, Larry Richardson declares, "My supervisors and managers never asked me how I had voted on any of the appeals we reviewed and no one ever evaluated me as to my service on the Appeals Committee. I never felt pressured in any way to affirm a decision Matrix had made about a claim." (Richardson Decl. ¶ 3, Ex. 47.)

Defendants cite to declarations showing the Appeals Committee did reverse Matrix decisions. Cindy Gonzales, the United States Disability Program Manager for Intel declares, "I have reviewed materials regarding LTD claims considered by the Appeals Committee from 2003 through 2005 and attest that approximately 24 cases were overturned and approximately 50 cases were upheld during that period." (Gonzales Decl. ¶ 2, Ex. 48.)

Plaintiff further argues her claim should be evaluated under a heightened standard of review because Matrix, due to a desire to renew its contract with Intel and obtain bonuses, was incentivized to deny Plaintiff's claim. Intel has renewed its contract with Matrix since 1994; and Intel's contract with Matrix also provides for a bonus if "[Matrix] consistently exceeds criteria." (Matrix and Intel

---

[1](...continued)
Since Defendants filed the present motion, Plaintiff has had ample time to conduct discovery on this issue and has been granted continuances of the hearing twice. (Sept. 19, 2008 Order; Jan. 5, 2009 Order.) Plaintiff's request is denied as untimely. See Strand v. Gen. Elec. Co., 945 F. Supp. 1334, 1337-38 (D. Haw. 1996) (denying plaintiff's motion to file second statement of supplemental facts as untimely because plaintiff had three months from the filing of defendant's motion for summary judgment to file the necessary affidavits in opposition to the motion).

7

Service Agreement; Ex. 21.) Plaintiff argues an inference should be drawn that the contract was renewed and bonuses were awarded because Matrix denied LTD benefits to Intel employees. Defendants controvert this assertion through the sworn affidavit of Mark Antonson, the Senior Director for Integrated Claims Management for Intel. He avers, "Incentive bonuses were not at all influenced by Matrix's grant or denial of claims." (Antonson Aff.) Antonson further declares:

> For the duration of the time I was involved in administration of the Plan, Matrix' performance was graded on how timely it paid claims, submitted monthly reports, and performed other duties related to the processing of claims, as reflected in the attached 'Matrix Supplier Scorecard' for 2003. Our performance was graded on the indicated criteria, without regard to how many of the LTD claims we administered were granted or denied. I never heard anyone representing Intel or Matrix ever suggest that our performance was in any way evaluated by reference to whether claims were granted or denied. ( ¶ 2, Ex. 49.)

Plaintiff also argues an inference should be drawn that Matrix used doctors from Doctor Experts and CORE, agencies who provided independent review of medical files, who would further both Intel and Matrix' goal of denying benefits. Defendants controvert this through the declarations of the Chief Executive Office ("CEO") of Doctor Experts and Dr. Sands. Kathleen Holcombe, the CEO of Doctor Experts declares:

> The outcome of a claim has no bearing on the services Doctor Experts provides. The physicians to whom Doctor Experts refer cases for medical review are expected to provide a completely objective evaluation of the file and they receive the same un-negotiated fee regardless of the outcome of the case. We sent one matter to [Dr. Burres] in the past five years, the medical file of [Plaintiff]. Matrix had no influence whatsoever over our choice of a physician to review [Plaintiff's] file.

(Holcombe Decl. ¶¶ 1-4.)

Dr. Sands stated in his expert report that "[his] compensation for performing the subject review is not dependent, in any way, on the outcome of this case." (Ex. 28.)

Plaintiff has not met her burden of providing "'material, probative evidence, beyond the mere fact of the apparent conflict,'" that would show either Intel or Matrix allowed self-interest to interfere with Plaintiff's benefits determination. Bendixen v. Standard Ins. Co., 185 F.3d 939, 943 (9th Cir. 1999) (quoting Atwood v. Newmont Gold Co., 45 F.3d 1317, 1323 (9th Cir. 1995). Therefore, "no basis [exists] from these facts and circumstances, beyond the mere existence of Intel's structural conflict of interest, to view the Administrator's decision with a degree of skepticism that would be significantly more scrutinizing than an ordinary abuse of discretion review." Wallace v. Intel Corp., 2006 WL 2709839 *8 (D. Ariz. 2006).

Defendants' Denial of Long Term Benefits[2]

The parties dispute whether Defendants abused their discretion in denying Plaintiff's claim for LTD benefits. Under an abuse of discretion review, a decision by a Plan administrator will be upheld unless it was "arbitrary and capricious." Oster v. Barco of Cal. Emps. Ret. Plan, 869 F.2d 1215, 1217 (9th Cir. 1988). Under ERISA, it is an abuse of discretion for a Plan administrator to "render decisions without any explanation, or to construe provisions of the plan in a way that conflicts with the plain language of the plan" or to rely on clearly erroneous findings of fact. Bendixen v.

---

[2] The denial of benefits is considered under the abuse of discretion standard because there is an insufficient showing of a serious conflict of interest. Under this standard, a motion for summary judgment "is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply." Bendixen v. Standard Ins. Co., 185 F.3d 939, 942 (9th Cir. 1999).

9

Standard Ins. Co., 185 F.3d 939, 944 (9th Cir. 1999). "The touchstone of 'arbitrary and capricious' conduct is unreasonableness." Clark v. Washington Teamsters Welfare Trust, 8 F.3d 1429, 1432 (9th Cir. 1993).

Plaintiff argues Defendants were arbitrary and capricious because they ignored the objective medical evidence she presented in support of her Chiari I Malformation diagnosis. (Pl.'s Opp'n Mot. Summ. J. 24-25:1-17.) Specifically, Plaintiff argues Defendants were arbitrary and capricious for the following reasons: they ignored the MRIs which she presented during her initial application and appeal; they disregarded the conclusions of her treating physicians, including two experts in Chiari Malformations, and instead credited the opinions of two doctors who had never treated Plaintiff and only conducted a record review, and who were not Chiari I Malformation specialists; they did not conduct an independent medical examination; and they denied her LTD benefits even though she had been awarded Social Security benefits.

Defendants controvert Plaintiff's assertions by showing both Matrix and Intel expressly informed Plaintiff the medical records she submitted had been considered. (Letter from Matrix to Plaintiff, June 25, 2004, Ex. 22; Letter from Matrix to Plaintiff, Sept. 1, 2005, Ex. 37.) Defendants further argue that neither Matrix nor Intel disputed the objective evidence of Plaintiff's Chiari I Malformation or syringomyelia, but rather found there was no objective medical findings to substantiate "Plaintiff's subjective complaints of pain, numbness, and fatigue which, according to Plaintiff, rendered her unable to work." (Defs. Reply 14:15-18).

Dr. Burres, who performed the record review for Matrix's initial benefits determination, frequently referred to Plaintiff's

MRI's and their contents in making his determination. (Dr. Burres, Independent Medical Examination, Ex. 21.) His report indicates he was aware of the MRI's and Plaintiff's previous diagnoses of Chiari I Malformation and syringomyelia, yet still concluded "that [Plaintiff] is capable of performing her sedentary job at Intel Corporation; [that he could] find no objective or substantive reason why restrictions or limitations should be placed [on her]." (Dr. Burres, Independent Medical Examination, Ex. 21.)

Dr. Sands, who conducted the peer review analysis for the Appeals Committee, also acknowledged Plaintiff's previous MRI scans and doctor reports. Dr. Sands stated in his expert report that Plaintiff's MRI showed a cervical syrinx yet still concluded that the "objective medical findings are of not so severe a nature to prevent the patient from performing any occupation for which she is or becomes qualified for based on education, training, and experience." (Dr. Sands, Peer Review Analysis, Ex. 28.) Both Dr. Burres and Dr. Sands also considered Plaintiff's previous medical records, including reports by Plaintiff's treating physicians that supported Dr. Burres' and Dr. Sands' ultimate conclusions.

Plaintiff's own physicians made inconclusive determinations as to the cause of Plaintiff's pain. In 1999, Dr. Jeffrey Klingman opined about Plaintiff's condition: "I think [Plaintiff's MRI finding dilated central canal versus small central syringomyelia] is really asymptomatic. Typically one will find evidence of spasticity or upper motor neuron findings in the lower extremities, or a cape-like sensory loss. She has none of this. Pain can be associated but it would be very unusual in the absence of paresthesias or numbness." (Klingman Report, Ex. 8). In 2002, Dr. Sandeep Kunwar observed, "I have a doubt

11

that [syringomyelia] is causing any of her symptoms." (Kunwar Report, Ex. 11.) Several other of Plaintiff's treating physicians made similar conclusions that her symptoms were not caused by the Chiari malformation. (Ds. Exs. 40, 39, 41, 52.)

Defendants were not required to defer to the conclusions of Plaintiff's treating physicians. The Supreme Court has held:

> Plan administrators . . . may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician. But . . . courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation.

Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003). Further, ERISA does not require "independent medical examinations," Rutledge v. Liberty Life Assurance Co. of Boston, 481 F.3d 655, 661 (8th Cir. 2007); Kushner v. Lehigh Cement Co., 572 F. Supp. 2d 1182, 1192 (C.D. Cal. 2008), and plan administrators are not constrained by an award of Social Security benefits, Madden v. ITT Long Term Disability Plan for Salaried Emps., 914 F.2d 1279, 1285-86 (9th Cir. 1990), because "the test for Social Security disability is different than that required under ERISA." Kushner, 572 F. Supp. at 1193.

Plaintiff has neither shown Defendants arbitrarily disregarded Plaintiff's objective medical findings of a disability as defined by the Plan, nor that the administrators relied upon clearly erroneous findings of fact. Based on the evaluations of the independent physician reviewers and the conflicting evidence within Plaintiff's medical records, "the record demonstrates there is a reasonable basis for concluding that the medical condition was not

disabling, the decision cannot be characterized as arbitrary, and we must defer to the decision of the plan administrator." Jordan v. Northrop Grumman Corp. Welfare Benefit Plan, 370 F.3d 869, 879 (9th Cir. 2004).

Plaintiff also argues that Defendants' denial of LTD benefits was inconsistent with the Plan's language. (Pls. Opp'n Mot. Summ. J. 30-31:8-9.) She contends that "so long as there is objective evidence supporting an illness, [Plaintiff] need not also present objective evidence of the symptoms." (Pls. Opp'n Mot. Summ. J. 30:25-27.) However, the Plan defined disability as "an illness or injury substantiated by objective medical findings and *which renders a participant incapable of performing work.*" (Intel Corporation Long Term Disability Plan, 2.05, 2.14., emphasis added.) Therefore, Defendants interpretation of the Plan requiring that objective medical findings substantiate the existence of a disability with a functional limitation that precluded the Plaintiff from working does not "clearly conflict[] with the plain language of the plan." Johnson v. Trustees of Western Conference of Teamsters Trust Fund, 879 F.2d 651, 654 (9th Cir. 1989).

Plaintiff contends Defendants were arbitrary and capricious because they failed to indicate the evidence that was needed to substantiate a disability under the Plan. Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 974 (9th Cir. 2006). Defendants controvert this assertion through the numerous letters sent to Plaintiff in which the terms of the Plan are stated, and the need to shown an inability to work based on objective medical findings is discussed. (Defs. Reply 22-26:14-6; Letter from Matrix to Plaintiff, Dec. 18, 2002, Ex. 12; Letter from Matrix to Plaintiff, April 23,

13

2004, Ex. 17; Letter from Matrix to Plaintiff, June 25, 2004, Ex. 22; Letter from Matrix to Plaintiff, Sept. 1, 2005, Ex. 37) Since the Defendants informed Plaintiff of the necessary information to submit in order to qualify as disabled under the Plan and explained their reasons for denying her benefits under the terms of the Plan, they did not arbitrarily and capriciously deny benefits without explanation. <u>Abatie</u>, 458 F.3d at 974.

<u>Conclusion</u>

For the reasons stated, Defendants' motion for summary judgment is granted. Judgment shall be entered in favor of Defendants.

Dated: March 20, 2009

_____
GARLAND E. BURRELL, JR.
United States District Judge